UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL JOHNSTON,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant.

______________________________________/

Case No. 2:17-CV-13308
District Judge Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 18) and AFFIRM THE COMMISSIONER'S DECISION**

**I. RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 18), and **AFFIRM** the Commissioner's decision.

## II. REPORT

Plaintiff, Cheryl Johnston, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance (DI) benefits and supplemental security income (SSI) benefits. This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 15), the Commissioner's cross-motion for summary judgment (DE 18), and the administrative record (DE 13).

**A. Background and Administrative History**

Plaintiff alleges her disability began on May 31, 2008, at the age of 36. (R. at 294, 303.) In her March 3, 2011 disability report, she lists several conditions (chronic fatigue, fibromyalgia, osteoarthritis, chronic pain, migraines, sudden falls and loss of strength in legs, difficulty standing, trouble concentrating, dyslexia, stuttering, and depression) that limit her ability to work. (R. at 356.) Her applications were denied initially on May 26, 2011, and again on reconsideration on September 22, 2011. (R. at 110, 111, 113, 145-53.)

On October 14, 2011, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 162-63.) On December 12, 2012, ALJ Kim D. Parrish held a hearing, at which Plaintiff and a vocational expert (VE), Margaret A. Kelsay, testified. (R. at 79-103.) ALJ Parrish issued an opinion on January 7, 2013, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 114-36.)

On March 8, 2013, Plaintiff submitted a request for review of the hearing decision/order. (R. at 208-09.) On May 22, 2014, the Appeals Council vacated ALJ Parrish's decision and remanded it for further administrative proceedings,

including the opportunity for a hearing and a new decision. (R. at 137-40.) (The directives of the remand are discussed in greater detail below.) On remand, ALJ Timothy C. Scallen held a hearing on December 15, 2015, at which Plaintiff and a vocational expert, Cheryl Mosley, testified, and additional medical records were submitted (Exhibits 27F – 31F). (R. at 36-71.) ALJ Scallen issued a second opinion on April 14, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 17-35.)

On June 1, 2016, Plaintiff submitted a request for review of ALJ Scallen's decision/order. (R. at 292-93.) However, on August 11, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ Scallen's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 10, 2017. (DE 1.)

**B. Plaintiff's Medical History**

The administrative record contains approximately 560 pages of medical records that were available to ALJ Scallen at the time of his April 14, 2016 decision. (R. at 425-987 [Exhibits 1F – 31F].) These materials be discussed in detail, as necessary, below.

**C. The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since May 31, 2008, her alleged onset date. (R. at 22.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, depressive disorder with psychotic features, posttraumatic stress disorder (PTSD), status post hernia, and appendectomy surgery. (*Id*. at 23-24.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 24-25.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC "to perform a full range of light exertional work as defined in 20 CFR 404.1567(b) and 416.967(b) with the additional limitations of simple, routine, repetitive tasks and occasional interaction with the public." (*Id.* at 25-26.) At **Step 4**, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id*. at 26.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id*. at 26-27.) The ALJ therefore concluded that Plaintiff

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

had not been under a disability, as defined in the Social Security Act, at any time from May 31, 2008 through the date of the decision. (*Id*. at 27.)

**D. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.     Analysis**

Plaintiff identifies two claims of error: (1) the ALJ improperly rejected the opinion of her treating therapist; and (2) the ALJ failed to create an accurate RFC assessment and erroneously found work at Step 5. (DE 15 at 12-18.) The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision. (DE 18 at 14-22.) I will address each argument in turn.

### 1. The ALJ's evaluation of the opinion of Plaintiff's treating therapist, Joyce Haskett, is supported by substantial evidence

Plaintiff argues that the ALJ improperly discounted the opinion of her treating therapist, Joyce Haskett, LMSW, a licensed clinical social worker. (DE 15 at 12-16.) Ms. Haskett began treating Plaintiff on March 17, 2015,[2] and completed a Mental Residual Functional Capacity Questionnaire on December 7, 2015, in which she opined that Plaintiff: suffers from major depressive disorder with psychotic features and PTSD; was "seriously limited," "unable to meet competitive standards," or had "no useful ability to function" in many of the "mental abilities and aptitudes needed to do" unskilled, semi-skilled or skilled work; had a low IQ or reduced intellectual functioning; and, she was given a Global Assessment of Functioning (GAF) score of 32. (R. at 853, 879, 898, 918, 931, 950-53.) Plaintiff contends that Ms. Haskett's opinion constituted a "treating source" opinion and that the ALJ failed to give "good reasons" for rejecting or discounting that opinion. (*Id.*)

---

[2] Plaintiff states that she "has seen Ms. Haskett extensively on a weekly basis from June 2014 – December 2015." (DE 15 at 12.) However, although Plaintiff treated at Pathways2 starting in June 2014 (R. at 845), she did not begin treating with Ms. Haskett until March 17, 2015. (R. at 917-18.)

First, the majority of Plaintiff's argument is based on the standard for the ALJ's evaluation of a treating *physician's* opinion, and that a treating *physician's* opinion is entitled to controlling weight if it is well-supported and not inconsistent with the record. (See DE 15 at 13-16.) However, the ALJ was not required to give Ms. Haskett's opinion controlling weight because, at the time of the decision, a therapist was not properly classified as an "acceptable medical source" (generally licensed physicians and psychologists) but rather as an "other source." *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Englebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513(d)); *see also Pellow v. Astrue*, No. 09-11587, 2010 WL 1626396, at *4 (E.D. Mich. Mar. 31, 2010) ("the opinion of Plaintiff's therapist … , a Licensed Master Social Worker, is not entitled to controlling weight[,]"), *report and recommendation adopted*, 2010 WL 1626394 (E.D. Mich. Apr. 21, 2010). An "other source" may provide probative evidence but is due no special deference, and the social security regulations require only that information from "other sources" be "considered." *See Erbland v. Comm'r of Soc. Sec.*, No. 1:13-CV-93, 2015 WL 5578020, at *3 (W.D. Mich. Sept. 22, 2015) (citing 20 C.F.R. §§ 404.1513, 416.913 (effective Sept. 3, 2013 – Mar. 26, 2017)). This is not a demanding standard and was easily met here.

In fact, it is apparent that the ALJ gave serious consideration to Ms. Haskett's opinion, but he disagreed with her extreme limitations, finding they were inconsistent with Plaintiff's treatment records. (R. at 25-26.) The ALJ first discussed Plaintiff's outpatient mental health records dated through May 2014, and found that:

> [The records] establish that the claimant was trying to deal with her parent's [sic] death, and that she alleged seeing the shapes of dead relatives and hearing mumbled voices. She denied any substance abuse, or suicidal/homicidal ideation. She stated that she did laundry and kept her room clean but that on some days she was too depressed to get out of bed. Still, the claimant admitted that her depression and hallucinations responded to medication and that there were no side effects. On examination, she was oriented to reality and her thought process was unimpaired. Her mood was stable, and her concentration and attention within normal limits. The diagnosis was a major depressive disorder with psychotic features and a generalized anxiety disorder, with a global assessment of functioning (GAF) rating of 45 (Exhibit 27F).)

(R. at 23, citing R. at 752-830.) The ALJ then went on to explain that "the mental health treatment notes from Pathways2 in 2014-2015 for PTSD and depression indicated "claimant always arriving looking appropriate with a smile; alert and oriented; intact functional status; appropriate affect and interactive" and that she "was noted in June 2015 as 'doing well.'" (R. at 23-24, citing R. at 844-948.) The ALJ then specifically found that:

> The clinical evidence shows that the claimant's psychiatric problems are under satisfactory control with treatment. Her reality orientation, mood, thought process, and concentration were all stable on examination, and she acknowledged a positive response to medication.

> She also admitted that there were no adverse side effects. The most significant finding was merely off-and-on anxiety. Consequently, the undersigned rejects Ms. Haskett's opinion in Exhibit 30F that the claimant's depression with psychotic features and posttraumatic stress disorder are serious enough to be disabling and having "no useful ability to function" even in areas of making simple work-related decisions, working with others and completing a normal workday without interruptions from psychologically based symptoms. The undersigned gives little weight to this opinion and low GAF score because it is not consistent with the treatment records as discussed above.

(R. at 25-26.)

Thus, the ALJ properly considered Ms. Haskett's opinion and gave it little weight because he found that it was not consistent with Plaintiff's treatment records. He thus satisfied his obligations under the Social Security Act with respect to this opinion. *See Erbland*, 2015 WL 5578020, at *3. Nothing more is required. While Plaintiff broadly alleges that the ALJ "incorrectly characterized the record," she fails to point out any factual inaccuracies in the ALJ's summation of Plaintiff's treatment records, as is her burden. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

The ALJ further expressly "[c]redit[ed] the initial [ALJ's] decision and [Plaintiff's] physical and mental impairments in combination[.]" (R. at 26; *see also id.* at 20 ("The original decision by another ALJ of January 7, 2013 is hereby

incorporated by reference to the extent it is consistent with this opinion (Exhibits 7A, 8A).") In that prior decision, ALJ Parrish gave "great weight" to the opinion of the State agency psychologist, who "assessed that the claimant could understand, remember and carry out simple and some complex tasks under routine supervision. She could relate to coworkers and supervisors for work purposes and she could tolerate some involvement with the general public." (R. at 130, citing R. at 490-507, 510-27, 555-74.) ALJ Parrish found in her decision that the State agency psychologist's opinions "are consistent with the medical documentation in its entirety and consistent with the Administrative Law Judge's findings." (R. at 130.) Plaintiff has not challenged this finding, which ALJ Scallen incorporated by reference into his opinion. This finding further supports ALJ Scallen's determination that Ms. Haskett's very restrictive opinion was entitled to little weight. Accordingly, the ALJ's decision is supported by substantial evidence and Plaintiff's claim of error should be denied.

**2. The ALJ's RFC's determination is supported by substantial evidence**

Plaintiff claims that "[t]he ALJ made an erroneous Step Five determination that is unsupported by the substantial weight of the evidence; the burden is on the Commissioner at Step 5." (DE 15 at 16.) Although Plaintiff purports to frame this as a challenge to the ALJ's Step 5 determination, because the hypothetical posed to the vocational expert in this matter is essentially identical to the RFC, this is in

reality a "veiled attack" on the ALJ's underlying RFC finding. *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed"); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

Again, it must be borne in mind that "during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) *(citing Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir.1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity"). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391-92.

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).

The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, '"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation omitted). Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the ALJ '"need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."' *Id.* (citations omitted).

ALJ Parrish initially found that Plaintiff was capable of performing the full range of light exertional work, and that she could return to her past relevant work as a cashier. (R. at 118-31.) Plaintiff requested review of that decision, and the Appeals Counsel remanded the case for a new hearing and decision because the ALJ's RFC "does not reflect limitations related to the claimant's depression and post-traumatic stress disorder," and advised that "[e]valuation is needed regarding the impact of the *mental limitations* on the claimant's ability to perform *mental work related activities*[.]" (R. at 138-39 (emphases added).) Accordingly, on remand, ALJ Scallen discussed subsequent evidence of Plaintiff's April 2015 hernia surgery and Plaintiff's mental health records, and found that "the record does not indicate any subsequent complications that would warrant materially changing her residual functional capacity for work at the light exertional level." (R. at 23, 26.) ALJ Scallen stated that "[t]he first decision should be referenced for a discussion of the earlier medical exhibits." (R. at 23, 26; *id.* at 20.)

In reaching her physical RFC findings, ALJ Parrish thoroughly reviewed and considered Plaintiff's function report, her hearing testimony, her daily activities, the objective medical evidence, her treatment history, and the opinion evidence, and found that Plaintiff was capable of performing the full range of light exertional work. (R. at 118-31.) Plaintiff contends that the ALJ's physical RFC finding failed to adequately account for the limitations caused by her fibromyalgia. (*Id.* at

16-18.) Specifically, Plaintiff stated that: a May 2008 exam note indicated persistent myalgias and recurrent falls, point tenderness on every muscle and 1+ edema bilaterally in the lower extremities; Plaintiff reported to the emergency room in July 2008 with tingling and numbness in her legs with upper back pain; a November 2012 exam note indicated bilateral ankle swelling and decreased range of motion in the bilateral knees; a February 2009 consultative examiner noted 18/18 fibromyalgia tender points, limited range of motion of the left hip and left shoulder, and tenderness to the lumbar spine with pain with range of motion testing; and, a January 2015 report noted knee crepitus and 18/18 fibromyalgia tender points. (DE 15 at 17-18, citing R. at 430, 439, 447, 750, 955-56.) Plaintiff argues that these records would cause "more limitations then [sic] the Plaintiff being limited to a full range of light exertional work." (DE 15 at 18.) Plaintiff contends, without citation to any record evidence, that her fibromyalgia and mental impairments would cause her to be off task more than 20% of the time in a typical workday, which the vocational expert testified would be work preclusive. (*Id.*)

ALJ Parrish extensively reviewed the evidence of Plaintiff's physical impairments, including expressly acknowledging almost all of the evidence Plaintiff cites above, including her fibromyalgia diagnosis, the record notations of 18/18 tender points, her allegations of frequent falls, arthritis, and migraines, and documented limited ranges of motion. (R. at 123-25, 126-28.) Similarly, as the

Commissioner points out in her brief, the consulting reviewing physician, Dr. Kenneth Wainner, whose opinion ALJ Parris afforded "great weight," similarly acknowledged this same evidence in opining that Plaintiff could perform the full range of light work. (R. at 130, 599-600.) ALJ Parrish found Dr. Wainner's opinion to be "consistent with the medical documentation in its entirety." (R. at 130.)

Nevertheless, Plaintiff argues that "it is *reasonable to conclude* that the multiple fibromyalgia tender points would cause more limitations than Plaintiff being limited to a full range of light exertional work." (DE 15 at 18 (emphasis added).) It is unclear exactly *to whom* this conclusion should be reasonable. The ALJ is prohibited from "playing doctor." *Simpson*, 344 F. App'x at 194. The Court is in no better position to leap to such a conclusion, nor may it "reweigh the evidence. That is solely the province of the Secretary." *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)). Moreover, while Plaintiff quantifies this conclusion by suggesting that the ALJ should have included a limitation that Plaintiff would be off task for 20% of the workday, she fails to cite to any supporting evidence for such a limitation. (*See* DE 15 at 18.) Indeed, ALJ Parrish noted that Plaintiff "has not had any substantiated permanent limitations or restrictions placed on her ability to perform basic work activities by any treating

or examining physician[.]" (R. at 130.) And, as discussed above, the opinion of her social worker in that regard was properly discounted. ALJ Scallen expressly incorporated ALJ Parrish's decision by reference to the extent it is consistent with his opinion. (R. at 20.) He was "not required to include in Plaintiff's RFC (or in the hypothetical question to the VE) those limitations that []he does not find credible." *Mullen v. Comm'r of Soc. Sec.*, No.13-14479, 2015 WL 1530778, at *11 (E.D. Mich. Mar. 31, 2015) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

At the hearing, ALJ Scallen presented a hypothetical question to the vocational expert that matched his RFC determination, and the vocational expert responded and identified jobs existing in significant numbers that could be performed. (R. at 67.) ALJ Scallen relied on that testimony to find that Plaintiff was not disabled at Step 5. (R. at 27.) Therefore, the record contains substantial evidence supporting the ALJ's RFC determination and his corresponding hypothetical question to the vocational expert and Step 5 finding. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Plaintiff's second claim of error should be denied.

**F. Conclusion**

The ALJ's decision was supported by substantial evidence, and no legal error which would lead to a different result has been shown. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 18), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 29, 2019

s/*Anthony P. Patti*
Anthony P. Patti

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on January 29, 2019, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti

UNITED STATES MAGISTRATE JUDGE